UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | | |
|---|---|---|
| RENE LOPEZ, | ) | |
| | ) | |
| Plaintiff, | ) | 3:09-CV-00104-LRH-VPC |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| GOLDCORP USA INC., and MARIGOLD MINING COMPANY, | ) ) ) | |
| Defendants. | ) ) ) | |

Before the court is Defendant Marigold Mining Company's ("Marigold") Motion for Summary Judgment (#32[1]). Plaintiff Rene Lopez has filed a response (#34) to which Marigold replied (#36).

**I.     Facts and Procedural History**

This is an employment discrimination and retaliation dispute arising out of Plaintiff's work for Marigold. In October, 2003, Marigold hired Plaintiff as an equipment operator. Plaintiff's duties included driving trucks and heavy equipment. Over the course of her employment, Plaintiff worked on several different crews.

The current suit concerns events that took place from approximately September, 2007, to

---

[1]Refers to the court's docket entry number.

October, 2009, while Plaintiff worked on the crew of Rodney Sample.  At the time Plaintiff joined Sample's crew, she was the only woman among approximately twenty employees on the crew.  By the time Plaintiff transferred to another crew, three other women worked on Sample's crew.

Marigold does not have a formal training program, and provides training to its employees as need arises.  After joining Sample's crew, Plaintiff told Sample that she wanted to receive additional training on different types of equipment.  However, in her first year on Sample's crew, Plaintiff did not receive any additional training.

After Plaintiff joined Sample's crew, she submitted an application for a position of a driller.  At that time, there were no vacant driller positions.  When a driller vacancy opened several months later, Sample filled the position with another employee who was currently performing the job.  Sample did not interview Plaintiff for the driller position.

Beginning in January, 2008, Plaintiff started to complain about being subjected to gender based discrimination in the workplace to Sample, his supervisors, and Human Resources manager, Bill Lawton.  Plaintiff based her complaints on Sample's statement made in front of other employees that Plaintiff's trainee, who had over twenty years of mining experience, would actually be training Plaintiff.  Moreover, when Plaintiff pointed out to Sample over the radio things that other employees were doing wrong, Sample stated that he would handle it.  Sample responded this way only towards Plaintiff and another male employee, Rick Strom.  In addition, when Plaintiff dealt with a runaway truck, Sample responded to her question in a sarcastic manner, but later provided appropriate assistance to a male employee in the same situation.

Plaintiff also based her complaints on the assertion that Sample did not stop an employee of his crew from harassing her.  Plaintiff used to talk on the radio with another truck driver, John Jinks. When Plaintiff told Jinks that she wanted to limit their conversations to work-related matters, Jinks allegedly angrily confronted Plaintiff, scaring her.  Plaintiff complained to Sample about Jinks' behavior.  Plaintiff claims that some time later, Jinks spat at Plaintiff's feet.  Jinks

1  denies threatening Plaintiff or spitting anywhere near Plaintiff.

2  Sample required all members of his crew to give safety presentations. On July 14, 2008, Sample told Plaintiff that it was her turn to give a safety presentation. Although Plaintiff informed Sample that she was uncomfortable speaking in front of groups, Sample did not excuse her from this requirement. On July 30, 2008, Plaintiff complained about having to make a safety presentation to the Mine Superintendent, Jerrod Eastman, who excused her from giving a presentation because she was not comfortable with public speaking.

3  On August 9, 2008, Sample asked Plaintiff to hand out safety-related papers to the crew during a safety meeting, but did not ask her to speak. While Plaintiff was handing out papers, members of the crew asked her questions about their content. Plaintiff responded that she did not know and sat down, and Sample answered the questions. After the meeting, Plaintiff suffered from anxiety and had to go home. Because Plaintiff's symptoms continued the following day, she missed another day of work. Eastman told Plaintiff that she would receive two "occurrences" for her absences under the company absence policy. However, Plaintiff did not receive any occurrences for missing work.

4  On August 18, 2008, Plaintiff met with Human Resources manager Lawton and informed him that Sample had discriminated against her on the basis of her gender. Following this meeting, Lawton investigated Plaintiff's allegations. Lawton met with Sample and spoke with other members of the crew. Lawton found that Sample did not require Plaintiff to give a safety presentation and did not discriminate against Plaintiff by denying her the training opportunities and equipment assignments. Lawton also determined that Sample's comments to Plaintiff and his interactions with her over the radio were not discriminatory. Lawton further investigated Plaintiff's allegations of discrimination against Plaintiff's co-worker John Jinks, finding no violations. During the investigation, Lawton placed Plaintiff on paid administrative leave.

After Plaintiff returned to work, she met with Lawton and Sample. They discussed her desire for more training and set up a schedule for training Plaintiff on a blade and a dozer. In mid-September, 2008, Plaintiff began training on the blade. Lawton also asked Plaintiff whether she wanted to train on the drill, but Plaintiff responded negatively. When another driller vacancy opened in 2009, Plaintiff again said she did not want that position.

In September, 2009, Plaintiff asked for a transfer from Sample's crew. Marigold's management granted her request within several weeks. Since December, 2009, Plaintiff has been on short-term disability leave.

Plaintiff filed a charge of sex-based discrimination with the Equal Employment Opportunity Commission ("EEOC"), and the EEOC issued Plaintiff a "Notice of Right to Sue." Plaintiff subsequently filed this action, alleging that Marigold discriminated against her on the basis of her gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17.

**II.     Legal Standard**

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party

4

must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at 252.

**III.  Discussion**

Plaintiff alleges that Marigold discriminated against her on the basis of her gender, thus violating Title VII. Plaintiff's causes of action include claims of hostile work environment and retaliation.[2] Marigold seeks summary judgment with regard to each of these claims, arguing that Plaintiff has failed to raise a genuine issue of material fact regarding discrimination and retaliation.

**A.  Discrimination**

Title VII makes it unlawful for an employer to discriminate against an individual with respect to the terms, conditions, or privileges of employment because of the individual's sex. 42 U.S.C. § 2000e-2(a)(1). Although not explicitly included in the text of Title VII, claims based on a

---

[2]Since Plaintiff's complaint does not assert a cause of action for disparate treatment, the court will not address the merits of this claim.

5

1  hostile work environment fall within Title VII's protections. *Harris v. Forklift Sys.*, 510 U.S. 17,
2  21 (1993) (holding that "when the workplace is permeated with discriminatory intimidation,
3  ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's
4  employment and create an abusive working environment, Title VII is violated").

5      To state an actionable claim under Title VII, Plaintiff must show that (1) she was subjected
6  to verbal or physical conduct based on her gender; (2) the conduct was unwelcome; and (3) the
7  conduct was "sufficiently severe or pervasive to alter the conditions of her employment and create
8  an abusive working environment." *Galdamex v. Potter*, 415 F.3d 1015, 1023 (9th Cir. 1995)
9  (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)).

10      To support her hostile work environment claim, Plaintiff identifies in her opposition the
11  following conduct by her supervisor Sample: (1) Sample told Plaintiff that she was a "low man on
12  the totem pole" when she first joined his crew; (2) Sample did not consider Plaintiff for a position
13  of a driller; (3) Sample did not provide Plaintiff with training necessary for employment
14  advancement and pay increases; (4) Sample rolled his eyes and had negative attitude towards a
15  female engineer; (5) Sample informed Plaintiff's male trainee in front of others that the trainee
16  would actually be training Plaintiff; (6) Sample acted in a derogatory manner towards Plaintiff
17  while assisting her with a runaway truck; (7) Sample dismissed and disregarded Plaintiff's
18  comments; (8) Sample violated safety protocol when working with Plaintiff; and (9) Sample
19  pressured Plaintiff to give a safety presentation even though he knew Plaintiff was afraid of public
20  speaking.[3]

21      In addition, Plaintiff has identified the following conduct by her co-workers as supporting

---

[3]In her opposition, Plaintiff also claims that Sample explicitly stated that women generally possess "poor judgement" and made derogatory and rude remarks about women on a daily basis. (Pl.'s Opp. Mot. Summ. J. (#34) 3:3-7.) Further, Plaintiff alleges that Sample informed male employees that they were doing a good job, but never made such comments to Plaintiff. (Pl.'s Opp. Mot. Summ. J. (#34) 3:19-20.) Plaintiff also claims that Sample told Plaintiff that he will never promote her. (Pl.'s Opp. Mot. Summ. J. (#34) 2:14.) However, Plaintiff's testimony and evidence in the record do not support these assertions. As such, the court does not consider this conduct in assessing the merits of Plaintiff's discrimination claim.

1  her hostile work environment claim: (1) Jinks said over the radio to someone else "I've got your
2  puppy dog," which Plaintiff interpreted to be a sexual reference; (2) another employee told Plaintiff
3  that he overheard Jinks call Plaintiff "an F'g bitch;" (3) when Plaintiff told Jinks to stop joking
4  with her over the radio, Jinks reacted in a threatening manner as if he was going to physically hurt
5  Plaintiff; (4) Jinks spat at Plaintiff's feet; (5) a male co-worker said that the night crew was better
6  because it contained no women; and (6) another male co-worker said over the radio to someone
7  else that he was going hunting for two-legged deer, which Plaintiff interpreted to be a sexual
8  reference.

Marigold claims that summary judgement is appropriate in this case because the alleged conduct was not sufficiently severe and pervasive. To determine whether conduct was sufficiently severe or pervasive to violate Title VII, the court considers "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270-71 (2001).

"The working environment must both subjectively and objectively be perceived as abusive." *Fuller v. City of Oakland, Cal.*, 47 F.3d 1522, 1527 (9th Cir. 1995) (citing *Harris*, 510 U.S. at 21). To determine if the workplace is objectively hostile, courts examine the issue from the perspective of a reasonable person with the same fundamental characteristics as the claimant. *Id.* Key factors in determining whether a work environment is hostile include (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, as opposed to a mere utterance; and (4) whether the conduct unreasonably interferes with an employee's work performance. *Harris*, 510 U.S. at 23.

Here, even when viewing the evidence in the light most favorable to Plaintiff, the court finds that the conduct of Sample and other employees does not rise to the level of severity and pervasiveness necessary to support a hostile work environment claim. For a finding of a hostile

7

work environment, the alleged harassment must be extreme. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998) (stating that in the context of Title VII, simple teasing, off-hand comments, and isolated incidents do not amount to harassment). From the perspective of a reasonable person working in the mining industry, the conduct of Sample and other employees, although lacking sensitivity, was not objectively hostile. While the comments made to Plaintiff, including the two comments made over the radio, that Plaintiff interpreted to have sexual connotations, are disrespectful and offensive, they do not rise to the level of extreme and pervasive harassment required to support a hostile work environment claim. Further, in the light of Plaintiff's two-year employment on Sample's crew, the court finds that the alleged conduct of Jinks constitutes an isolated incident that is insufficient to support a claim for hostile work environment.

In sum, the instances Plaintiff identifies are not the type of conduct that the Ninth Circuit has found to be so severe and pervasive as to alter the conditions of employment. *See, e.g., Davis v. Team Elec. Co.*, 520 F.3d 1080 (9th Cir. 2008) (finding female employee demonstrated material issues of fact concerning the severity of supervisors' conduct where, over the course of nearly one year, supervisors stated, "[w]e don't mind if females are working as long as they don't complain," indicated certain food brought to work was only for the guys, referred to their wife as "astrobitch," told plaintiff a foreman needed a girlfriend, told plaintiff not to go into a trailer even though male employees were permitted to enter, and stated, "this is a man's working world out here, you know"); *Craig v. M&O Agencies, Inc.*, 496 F.3d 1047 (9th Cir. 2007) (finding female employee had stated prima facie case for hostile work environment where her supervisor made repeated comments over several months about her legs, followed her into a female restroom and kissed her, and, on at least four other instances, made inappropriate comments, including comments about having sexual relations with her); *Ellison v. Brady*, 924 F.2d 872, 872 (9th Cir. 1991) (finding that female employee stated claim for hostile work environment where co-worker sent her two letters

stating that he had been "watching" and "experiencing" her, making repeated references to sex, and indicating he would write again).

Accordingly, summary judgment with regard to Plaintiff's hostile work environment claim is appropriate.

### B. Retaliation

Plaintiff also alleges that Marigold retaliated against her for her repeated complaints to the management and for filing a complaint with the EEOC. To establish a prima facie case of retaliation, a plaintiff must demonstrate that "(1) she engaged in an activity protected under Title VII; (2) her employer subjected her to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action." *Thomas v. City of Beaverton*, 379 F.3d 802, 811 (9th Cir. 2004) *(*citing *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000)).

#### 1. Protected Activity

Under section 2000e-3(a), it is unlawful "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by [Title VII ], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Here, Plaintiff made repeated complaints about the alleged sexual discrimination to her supervisor, the superintendent, and the Human Resources manager. She also filed a complaint with the EEOC. Thus, Plaintiff engaged in protected activity under Title VII. *See* 42 U.S.C. § 2000e-2. Accordingly, Plaintiff has satisfied the first prong of her prima facie case of retaliation.

#### 2. Adverse Employment Action

Next, to demonstrate an adverse employment action, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, meaning that it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) (citations omitted). While a prima

facie case of Title VII's substantive provision (anti-discrimination) and a prima facie case of retaliation both require an adverse employment action, the two terms are not coterminous. *Id.* at 67. Instead, "the scope of the anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm." *Id.*

In this case, Plaintiff claims that Marigold took adverse employment action against her by (1) giving her baseless reprimands, (2) assigning her different position responsibilities than similarly positioned workers, (3) overlooking Plaintiff's friends for promotion and assigning them to operate equipment with lower status, and (4) escalating demeaning and derogatory remarks addressed at Plaintiff.

The court finds that the record does not support the allegation that Plaintiff received baseless reprimands as a result of her protected actions. Plaintiff fails to identify any evidence on the record suggesting that she received reprimands after her complaints to the management about the alleged discrimination. As such, no genuine issue of material fact exists as to whether Marigold took adverse employment action by reprimanding Plaintiff in retaliation for her protected activity.

The record similarly fails to support Plaintiff's assertion that the verbal abuse directed at Plaintiff escalated after she complained to the management. Plaintiff, as the non-moving party, has the burden to identify specific facts demonstrating a genuine issue of material fact regarding an adverse employment action. However, Plaintiff does not identify even a single demeaning or degrading remark made to her after she complained to Human Resources. In fact, although Human Resources manager Lawton instructed Plaintiff to report any continuing issues, Plaintiff never contacted Lawton with any additional grievances after her original complaint. Accordingly, no reasonable jury could find that Marigold and its employees retaliated against Plaintiff by making demeaning and degrading comments.

As to assigning Plaintiff different position responsibilities, Plaintiff also fails to identify

10

facts suggesting that Marigold took any adverse employment actions as a result of Plaintiff's complaints. The evidence on the record does not support Plaintiff's assertion that Marigold or any of its employees retaliated against Plaintiff by assigning her to a less favorable position or less desirable duties in comparison with other workers with comparable qualifications. To the contrary, the record demonstrates that after Plaintiff expressed her dissatisfaction, Human Resources manager Lawton met with Plaintiff and Sample. During the meeting, they addressed Plaintiff's frustration about not getting enough training on new equipment and set up a schedule for Plaintiff's training on a blade and a dozer. In mid-September 2008, Plaintiff began her training on the blade. Lawton also asked Plaintiff whether she wanted to train on the drill, but Plaintiff responded negatively. When another driller vacancy opened in 2009, Marigold offered it to Plaintiff, but Plaintiff declined again. In sum, the record clearly indicates that Marigold has taken affirmative steps to address Plaintiff's grievances and meet her requests. Plaintiff has not fulfilled her burden of identifying specific facts suggesting retaliation. As such, no reasonable jury could find that Marigold retaliated against Plaintiff by assigning her different responsibilities or refusing to provide to her opportunities for advancement.

Plaintiff further alleges that Marigold took adverse employment action against her by assigning Plaintiff's boyfriend, Rick Strom, to operate different equipment. Specifically, Plaintiff alleges that after she complained to the management, Sample assigned Strom to drive a truck more often that other operators at his pay grade. However, the time cards, the accuracy of which is not disputed, demonstrate Strom drove trucks more often than other comparable employees even before Plaintiff's complaints. The time cards further show that another employee at Strom's pay grade drove a truck considerably more often than Strom. Accordingly, the evidence in the record does not support Plaintiff's claim of retaliation.

Plaintiff further claims that Sample retaliated against her by passing Strom over for a promotion. However, Plaintiff admitted that Strom was ineligible for a promotion because of a

disciplinary occurrence on his record. She also admitted that as soon as the occurrence dropped from Strom's record, he received the promotion. As a result, no evidence before the court supports the alleged retaliation against Strom.

Plaintiff further states that in response to her complaints, Marigold retaliated against Rael Desrosies because he carpooled with Plaintiff. Specifically, the alleged retaliation consisted of assigning Desrosies, who primarily operated a shovel, to run haul trucks and water trucks. However, Desrosies' testimony contradicts Plaintiff's assertion because he does not believe that Sample treated him unfairly or retaliated against him. (Ex. Support Mot. Summ. J. (#33) Ex. E.) Moreover, the record lacks facts indicating that Marigold assigned Desrosies to operate other equipment more frequently than any other shovel operators. Most importantly, there is no indication that Sample or anyone else in the management knew about Plaintiff's friendship with Desrosies or their carpooling arrangement. Accordingly, the court finds that Plaintiff has not identified issues of facts regarding an adverse employment action.

Consequently, Plaintiff has failed to meet her burden and present evidence creating a genuine issue of material fact regarding adverse employment action in response to her complaints. As a result, summary judgment on Plaintiff's retaliation claim is appropriate.

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment (#32) is GRANTED.

The Clerk of the Court shall enter judgement accordingly.

IT IS SO ORDERED.

DATED this 13th day of August, 2010.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE